**GRANITE CONSTRUCTION COMPANY, a California corporation, Plaintiff,**

v.

**ALLIS–CHALMERS CORP., a Delaware corporation, Defendant.**

**No. CV–R–85–542–ECR.**

United States District Court, D. Nevada.

July 8, 1986.

William J. Works, Carson City, Nev., for plaintiff.

David L. Ainbender, Keith R. Weed, David L. Sandborg, Bronson, Bronson & McKinnon, San Francisco, Cal., Casey W. Vlautin, Shawn B. Meador, Reno, Nev., for defendant.

## ORDER

EDWARD C. REED, Chief Justice.

Defendant Allis-Chalmers Corporation (A–C) moves this Court to dismiss the complaint in this case pursuant to Fed.R.Civ.P. 12(b)(6). A–C also requests a hearing and oral argument.[1] In conjunction with this motion and upon request of both parties, the Court will take judicial notice of pertinent documents filed in the prior state court proceeding dealing with this action. Granite also attached to its opposition other material which failed to conform with Fed.R.Civ.P. 12(b)(6) or 56. The Court did not consider this material in deciding this motion. However, because this Court is considering material outside the pleadings, we must treat this motion as a motion for summary judgment under Fed.R.Civ.P. 56.

*See Grove v. Mead School District No. 354*, 753 F.2d 1528, 1533 (9th Cir.1985). This Court is considering only the material proposed by both Granite and A–C that reflected the court documents in the prior relevant state court proceeding. *See* Exhibits 1, 4, 5, 6, 7, and 8 to Defendant's Request for Judicial Notice, and Exhibits G, H, I, J, K, and L to Plaintiff's Opposition to Motion to Dismiss. Accordingly, we find that both parties, who are ably represented by counsel, invited consideration of the proposed material and have notice that this Court may use the material, requiring the motion to dismiss to be transformed into one for summary judgment. *Grove v. Mead School District No. 354*, 753 F.2d at 1533.[2]

Plaintiff Granite Construction Company (Granite) filed this diversity action alleging misrepresentation, breach of contract, and strict liability. Specifically, Granite alleges in its complaint that it purchased an asphaltic batch plant from Silver State Asphalt, Inc. (Silver State) which Silver State purchased from Stansteel Corporation, a subsidiary of A–C. Granite alleges its ownership through a series of assignments. Granite first alleges that the original purchaser of the plant assigned all of its rights under its contract of sale with Stansteel to Silver State. Silver State subsequently assigned all of its rights to Granite. Further, Granite alleges that although A–C held out Stansteel to be a separate and distinct corporation, in reality, Stansteel was the alter ego of A–C.

Granite alleges that the plant never operated properly according to the contract and promises by A–C. First, Granite asserts that A–C represented that the plant would produce 12,000 pounds of asphaltic concrete per batching cycle, where in reality it was never capable of producing more than 8,000 pounds. Second, based upon the

---

1. In light of the fact that this motion is filed pursuant to Fed.R.Civ.P. 12(b)(6), A–C's request for a "hearing" shall be presumed to be a hearing on legal arguments as no evidence is appropriate for a Rule 12(b)(6) motion. The Court finds such a hearing to be unwarranted.

2. Granite's request in its opposition that it be given notice if this Court treated the instant motion as one for summary judgment is puzzling considering the joint request by the parties to take judicial notice of the state court documents.

original contract for sale of the plant, Granite alleges that the plant failed to produce the quantity and quality of asphaltic concrete which the parties contracted for. Finally, Granite argues under a strict liability theory that the plant had design and manufacturing defects.

In August, 1980, Silver State sued Stansteel in the Second Judicial District Court of the State of Nevada, No. 80–6507. This complaint argued for damages based upon the same asphaltic plant which is the basis of this lawsuit and alleged breach of warranty, strict liability, negligence, and misrepresentation. Following a jury trial in March, 1985, Silver State was awarded $166,163.00 in damages against Stansteel. Granite filed this action against A–C in October, 1985.

In support of its motion to dismiss, A–C argues: (1) that applicable Nevada statutes of limitations bar all causes of action in the complaint; (2) that no cognizable claim under a strict liability cause has been stated; and (3) that res judicata bars the entire complaint. Granite opposes this motion.

For the purpose of this motion to dismiss, this Court must accept as established the well-pleaded facts of the complaint. *See Collins v. Hardyman*, 341 U.S. 651, 652, 71 S.Ct. 937, 95 L.Ed. 1253 (1951). We must deny the motions unless it can be said that Granite can prove no set of facts in support of its claims. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Further Nevada law applies to this diversity action. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). With these standards in mind, we turn to the issues presented.

A–C contends that the doctrine of res judicata bars Granite's entire complaint because the issues raised are identical to the previous state court action between Silver State and Stansteel. Granite argues that the previous case concerned a different contract, different party defendant, and different damages. Granite offers no other argument or analysis in opposition to A–C's contention of res judicata.

■ Res Judicata "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). Res Judicata serves to protect adversaries from the expense and vexation attending multiple lawsuits, to conserve judicial resources, and to foster reliance on judicial action by minimizing the possibility of inconsistent decisions. *Id.* By virtue of the Full Faith and Credit Clause of the United States Constitution, res judicata principles apply to actions in the state courts of different states. *See* U.S. Const. art. IV, § 1; *Durfee v. Duke*, 375 U.S. 106, 109, 84 S.Ct. 242, 244, 11 L.Ed.2d 186 (1963). Further, federal courts are required by statute to give res judicata effect to the judgments of state courts. *See* 28 U.S.C. § 1738; *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). In determining the applicability of res judicata in this case, the Court is bound to determine the preclusive effect that a Nevada state court would give to the prior Nevada state judgment. *See Vari-Build, Inc. v. City of Reno*, 596 F.Supp. 673, 677 (D.Nev.1984).

Under Nevada law, the elements of res judicata are: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the action in question; (2) whether there was a final judgment on the merits; and (3) whether the party against whom the judgment is asserted was a party or in privity with a party in the prior adjudication. *See Horvath v. Gladstone*, 97 Nev. 594, 596, 637 P.2d 531, 533 (1981); *Paradise Palms Community Ass'n v. Paradise Homes*, 89 Nev. 27, 30, 505 P.2d 596, 599 (1973).

■ The doctrine of res judicata "... bars relitigation not only of all issues actually decided, but of all issues that might have been decided." *Zaika v. Del E. Webb Corp.*, 508 F.Supp. 1005, 1007 (D.Nev. 1981)) *quoting Umberfield v. School District No. 11, Etc.*, 185 Colo. 165, 522 P.2d

730, 732 (1974). The doctrine is applied only when the party against whom the earlier decision is being asserted had a "full and fair opportunity" to litigate the issue in question. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481 n. 22, 102 S.Ct. 1883, 1897 n. 22, 72 L.Ed.2d 262 (1982).

The jury verdict rendered in the Silver State action was based upon the same facts and the complaints in both actions allege the same causes of action. Compare Exhibit 2, Defendant's Request for Judicial Notice, and Complaint (document # 1). Granite's contention that a different contract is at issue in this case does not save the complaint. Not only did Silver State attempt to assert claims based upon the same contract that Granite relies on (the state court judge found that the contract was inapplicable), but as noted above, res judicata bars the relitigation of issues which could have been litigated in the first suit. *Federated Department Stores v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981); *Estate of Firsching v. Ferrara*, 94 Nev. 252, 255, 578 P.2d 321, 328 (1978). Thus, this Court finds that the issues involved in the two cases are based upon the same causes of action.

The judgment entered on the basis of the jury verdict in the state court is a valid final judgment on the merits. Accordingly, the remaining question before this Court is whether the parties involved in this case are the same or in privity with the parties in the state court action.

■ Persons who are not parties to an action ordinarily are not bound by the judgment in the subsequent action. *See* 1 Restatement of Judgments, Second § 34(3) (1981). Nonparties to an action are said to be in "privity" with a party and, therefore, bound by a judgment only when, under any of several related but distinct exceptions to the general rule, "the relationship between one or more persons is such that a judgment involving one of them may justly be conclusive upon the others, although those others were not party to the lawsuit." *Gill & Duffus Servs., Inc. v. Islam*, 675 F.2d 404, 405 (D.C.Cir.1982) (per curiam) (citations omitted).

■ Under Nevada law, a party is bound by the earlier litigation if in privity with a party to that prior litigation, *Paradise Palms*, 89 Nev. at 31, 505 P.2d at 598. "A privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." *Id.* at 32, 505 P.2d at 599, *quoting Bernhard v. Bank of America Nat. Trust & Savings Ass'n*, 19 Cal.2d 807, 122 P.2d 892 (1942).[3]

This issue is best examined in light of Granite's complaint. Strong policy considerations support looking to the gravaman of the complaint in order to determine whether res judicata bars Granite's complaint in this court. Granite's complaint states:

10. That on or about March 10, 1977, Silver State Asphalt, Inc., a Nevada Corporation, entered into a "lease-purchase" contract with Commercial Credit Industrial Corp. whereby Commercial purchased the aforesaid "RM–120" asphaltic

---

**3.** Granite's argument that A–C was not a party-defendant to the state court action fails to support any opposition to the application of res judicata to this action. There is no reason "for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation." *Paradise Palms*, 89 Nev. at 31, 505 P.2d at 598. Accordingly, the issue before this Court is whether Granite is bound by the earlier litigation. The Court notes that the state court did not, as Granite asserts, deny Granite's motion to join A–C as a defendant because the court determined that A–C was an inappropriate party.

Rather, A–C was not joined in that action because Silver State failed to properly serve A–C. While it appears to be true that one basis of A–C's challenge to joinder in the previous lawsuit was its contention that it was a separate and distinct entity from Stansteel, the state court made no such ruling. Furthermore, Granite's complaint before this Court alleges that A–C liquidated all of Stansteel's assets and that A–C is the only viable corporation. Granite's attempt to distinguish A–C and Stansteel in its opposition contradicts its allegations in the complaint.

batch plant from ALLIS–CHALMERS CORP. for the use and benefit of Silver State Asphalt and assigned all of its rights and remedies under said purchase agreement to Silver State Asphalt.

11. On or about October 15, 1980, plaintiff purchased the subject ALLIS–CHALMERS "Stansteel RM0120: asphaltic batch plant from Silver State Asphalt, Inc., thereby acquired all of Silver State's "right, title and interest" in the same, and commenced to operate the subject asphalt plant at Sparks-Mustang, Nevada.

Complaint at 3, ¶ 10, ¶ 11.

In addition, Granite alleges:

2. That the rights and benefits of the contract entered into between Commercial Credit Industrial Corp. and Defendant in 1977 were "assignable to the Buyer's (Commercial's) assigns to the same extent as they accrued to" Commercial.

3. That Commercial did, in fact, assign these rights to Silver State Asphalt, Inc., and those rights were thereupon assigned to plaintiff by Silver State on October 15, 1980.

4. That plaintiff herewith and hereby sues defendant as a direct assignee of Commercial's rights, and further alleges that defendant breached said contract in that the subject asphalt plant did not operate or produce asphalt as called for and agreed to by defendant under the same.

Complaint at 6–7, ¶ 2, ¶ 3, ¶ 4.

On the face of its complaint, Granite bases its standing on Silver State's rights. Granite's interest in the subject matter of its complaint was acquired from Silver State and, thus, Granite is in privity with Silver State. Accordingly, the Court finds that res judicata is appropriately applied in this case.

IT IS, THEREFORE, HEREBY ORDERED that A–C's motion for summary judgment is GRANTED. The Clerk shall enter judgment in favor of defendant and against plaintiff.